JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 17-00323-AB (FFMx) | Date: | March 17, 2017 |
|---|---|---|---|

| Title: | *Johnny Galvan, et al. v. Walt Disney Parks & Resorts U.S., Inc.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Ingrid Valdes | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**       **[In Chambers] Order Granting Plaintiffs' Motion for Remand**

Before the Court is Plaintiffs Johnny Galvan, Sandy Mumma, and Stavros Patsalos' (collectively, "Plaintiffs") Motion for Remand, filed February 13, 2017. (Dkt. No. 15.) Defendant Walt Disney Parks & Resorts U.S., Inc. ("Disney" or "Defendant") filed an opposition on February 27, 2017, and Plaintiffs filed a reply on March 6, 2017. (Dkt. Nos. 18, 19.) Having considered the arguments and materials submitted, the Court deems this matter appropriate for resolution without oral argument and **VACATES** the hearing set for March 20, 2017. For the following reasons, the Court **GRANTS** Plaintiffs' motion.

## I. BACKGROUND

This action arises from a change in disability policies at Disney parks. Before October 2013, Disney accommodated guests with special needs by issuing "Guest Assistance Cards ("GACs"). With these cards "Plaintiffs knew they could expect minimal manageable waits at the various attractions of interest." (Notice of Removal Ex. A, Complaint ("Compl.") ¶ 19.) Though not well-articulated in the Complaint, it appears

park employees would accommodate these cardholders by allowing them to forego traditional lines to get on rides or visit other park attractions.

In October 2013, Disney replaced Guest Assistance Cards with Disability Access Service ("DAS") cards.   It is not clear from the Complaint what guests were required to do to obtain GACs before October 2013, but to obtain a DAS card thereafter, guests were required to report to Guest Relations to have a photograph taken.   Plaintiffs contend that including this added wait time with Guest Relations to the wait times they would have to endure in the regular lines at park attractions necessarily resulted in lengthier wait times in the aggregate for disabled guests than for non-disabled guests.   (*Id.* at ¶ 23.)   As Plaintiffs calculate, "[i]f a disabled person waits one hour at Guest Relations to obtain the DAS card, then complies with the DAS and rides one ride which has a one-hour wait time, the disabled person's wait time is two hours, while the non-disabled person's wait time is only one hour."   (*Id.*)

Plaintiff Johnny Galvan has a diagnosed anxiety disorder and back disability, which prevent him from "waiting or biding time without cognitive and visible goal impairments occurring."   He and his wife, Plaintiff Sandy Mumma, visited Disneyland in Anaheim, California, in January, April, and May 2015.   Plaintiffs contend they were "forced to leave the park" because they were not allowed "to get a pass to go through the entrance line of the ride at the exit" (which it appears, though it is unclear from the Complaint, they were permitted to do with GACs), and because Galvan was unable to wait in line.   (*Id.* at ¶ 25.)

Plaintiff Stavros Patsalos, who suffers from cerebral palsy, and during the time of his visit to Walt Disney Park in March, 2015, he was also recovering from knee surgery and therefore was "incapable of waiting in line for an extended period of time."   (*Id.* at ¶ 27.)   In his previous experience at the park, Patsalos was able to get a pass to go to the front of the lines for rides or get appointments to be able to get on a particular ride at a particular time to avoid wait times.   During his visit in 2015, Patsalos was not afforded these accommodations and "left the park."   (*Id.*)   All three Plaintiffs claim they suffered emotional distress as a result of the treatment they received at Disney parks.   (*Id.* at ¶¶ 31, 35.)

As a result, Plaintiffs allege claims for violations of California's Unruh Civil Rights Act and negligent and intentional infliction of emotional distress.   (*Id.* at ¶¶ 24-39.)

## II. LEGAL STANDARD

As courts of limited jurisdiction, federal courts have subject matter jurisdiction only over matters authorized by the Constitution and Congress.   *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   A suit filed in state court may be

removed to federal court if the federal court would have had original jurisdiction over the suit.   28 U.S.C. § 1441(a).   A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction.   28 U.S.C. § 1447(c).

Under 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court on the basis of diversity jurisdiction if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441.   Diversity jurisdiction requires that the parties be in complete diversity and the amount in controversy exceed $75,000.   *See* 28 U.S.C. § 1332.

The amount in controversy is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005).   "[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"   *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).   And while "'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' . . . '[e]vidence establishing the amount is required'" when "defendant's assertion of the amount in controversy is contested by plaintiff[]."   *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014).   "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."   *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *Martinez v. Los Angeles World Airports*, 2014 WL 6851440, at *2 (C.D. Cal. Dec. 2, 2014).   Where it is unclear from the face of the complaint whether the amount in controversy is satisfied, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy is satisfied.

## III.    DISCUSSION

Plaintiffs move to remand this case, asserting their claims do not put $75,000 in controversy, such that the requirements of diversity jurisdiction under 28 U.S.C. § 1332 are not satisfied.

For each of their claims, Plaintiffs seek general and special damages in an amount

according to proof, costs of suit, and "other and further relief as the Court deems just and proper." Plaintiffs also seek attorneys' fees in association with their Unruh Act claim. In their Motion for Remand, Plaintiffs argue this relief does not amount to $75,000. (Dkt. No. 15, Mot. at 3.) Specifically, Plaintiffs argue they seek statutory damages under the Unruh Act, totaling $28,000, or $4,000 per violation per person. (*Id.*) Plaintiffs also seek $5,520 in attorneys' fees accrued "prior to this motion," and $600 in costs. (*Id.* at 3-4.)

## A. Compensatory Damages

Defendant claims the amount in controversy is met by the damages alleged under Plaintiffs' Unruh Act and emotional distress claims, as established by "numerous jury verdicts in cases involving analogous facts." Defendant cites several cases alleging Unruh Act violations and emotional distress claims where juries returned verdicts that, alone or when trebled, met the amount in controversy. (Dkt. No. 18, Opp'n at 5-6.) But these citations alone are not sufficient to meet Defendant's burden *in this case* to demonstrate by a preponderance of the evidence that the amount in controversy is satisfied.

First, Defendant does not demonstrate that any of the cases cited are sufficiently analogous, "with substantially similar factual scenarios[ ] that might guide the court as to what emotional distress damages might be recovered here." *Ornelas v. Costco Warehouse Corp.*, No. CV 14-4759-FMO-PJWx, 2014 WL 3406435, at *2 (C.D. Cal. July 9, 2014). *See also Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012) ("While settlements and jury verdicts in similar cases can provide evidence of the amount in controversy, the cases must be factually identical or, at a minimum, analogous to the case at issue."). Defendant cites *Dov v. Ascot Hotel LLC*, 2007 WL 4946166 (Cal. Super. Ct. May 22, 2007), for the proposition that Unruh Act and negligent and intentional infliction of emotional distress claims have yielded $151,200 in compensatory damages. (Opp'n at 5.) In *Dov*, a plaintiff with a mental disability was denied housing when he sought to live with his companion animal despite the defendant's "no pets" policy. The plaintiff subsequently spent four days homeless. *Dov*, 2007 WL 4946166. Defendant also cites *Donovan v. Poway Unified Sch. Dist.*, 2005 WL 3358987 (Cal. Sup. Ct. June 8, 2005), where a jury awarded $125,000 and $175,000 to two plaintiffs for emotional distress under the Unruh Act. In *Donovan*, the plaintiffs suffered harassment, discrimination, and intimidation on account of their sexual orientation and were forced to engage in a home study program as a result. Though both of these cases involved Unruh Act and emotional distress claims, the Court does not find, nor does Defendant argue, that the facts presented are substantially similar so as to shed any light on the amount in controversy in this case.

The fact that the cited cases allege similar or identical claims is not enough to

establish the amount in controversy beyond a reasonable doubt because, just as juries may have previously awarded damages in excess of the amount in controversy, they have also awarded less.   Defendant also cites *Paletz v. Adaya*, 2012 WL 6951490 (Cal. Super. Ct. Sept. 27, 2012), where a jury awarded individual plaintiffs damages and statutory penalties for emotional distress under the Unruh Act in amounts far below the jurisdictional minimum required in this case.   The fact that Plaintiffs allege claims for Unruh Act violations and emotional distress does not itself establish the amount in controversy, and without evidence of more similar cases, the Court does not find that Defendant has established the amount in controversy is satisfied in this case based on these citations alone.

Moreover, as Defendant admits, Defendant cited many, if not all, of these cases in its Notice of Removal.   (*Compare* NOR ¶¶ 20-24, *with* Opp'n at 4-6.)   As noted, Defendant's burden increased from raising a "plausible allegation" in the notice of removal to establishing the jurisdictional requirements by a preponderance of the evidence once Plaintiff challenged the propriety of removal.   *Ibarra*, 775 F.3d at 1197 (quoting *Dart Cherokee*, 135 S.Ct. at 554).   While the cited cases may have been enough to meet the former burden, they do not meet the latter.

## B. Punitive Damages

Defendant also argues Plaintiffs seek punitive damages in their prayer for relief for their negligent and intentional emotional distress claims.   (Opp'n at 6.)   Though punitive damages may be included in the amount in controversy calculation, *see Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), Defendant does not cite to cases that allow the Court to do anything more than speculate as to the amount actually in controversy here. Defendant cites *Romero v. Leon Max Inc.*, 2009 WL 5258439 (Cal. Sup. Ct. Nov. 2, 2009), and *Graber v. Litton Guidance & Control Sys.*, 1998 WL 1039030 (Cal. Sup. Ct. Aug. 11, 1998), cases in which juries returned substantial punitive damages awards.   "[B]ut [Defendant] make[s] no attempt to analogize or explain how these cases are similar to the instant action.   Simply citing these cases merely illustrate that punitive damages are possible, but in no way shows that it is likely or probable in this case."   *Killion v. AutoZone Stores Inc.*, No. 5:10-CV-01978, 2011 WL 590292, at *2 (C.D. Cal. Feb. 8, 2011).   *See also Antonelli v. Time Warner Entm't-Advance/Newhouse P'ship*, No. CV 11-00812, 2011 WL 2712554, at *2 (C.D. Cal. July 13, 2011) ("Defendant submits no evidence and no underlying facts that establish the actual amount in controversy. Conclusory assertions and general citations to cases, without any discussion or support, are simply not enough.   Nor does Defendant show that damages of greater than $75,000 have been awarded in cases that are factually similar to this one.").   Here, "Defendants' inclusion of punitive damages in the calculation of the jurisdictional amount is speculative and unsupported."   *Killion*, 2011 WL 590292, at *2.   The Court therefore has no basis to

include punitive damages in the amount in controversy calculation.

## C. Attorneys' Fees

"[W]here an underlying statute authorizes an award of attorney's fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."   *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).   A split of authority persists concerning whether post-removal legal costs should be included, but this Court and several others in the district have recently held that "post-removal attorneys' fees authorized by law are part of the amount in controversy."   *Sawyer v. Retail Data, LLC*, No. CV 15-0184, 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (citing *Sasso, supra*, 2015 WL 898468, at *5); *see also, e.g., Garcia v. ACE Cash Express, Inc*., No. CV 14–00285, 2014 WL 2468344, at *5 (C.D. Cal. May 30, 2014); *Brady v. Mercedes–Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) (collecting cases and concluding that post-removal fees contribute to amount in controversy when fees are authorized by law).

The Unruh Act does provide for the recovery of attorneys' fees.   Cal. Civ. Code § 52(a).   Defendant contends, based on counsel's "experience litigating these cases for nearly three years, the legal work required to challenge the DAS system, whether on behalf of 40 plaintiffs or a single plaintiff, would be many times greater than the $75,000 jurisdictional minimum."   (Declaration of Kerry Alan Scanlon in support of Defendant's Opposition ¶ 7.)   Defendant also cites several cases where courts awarded attorneys' fees under the Unruh Act and the Americans with Disabilities Act "in amounts far in excess of the jurisdictional minimum."   (Opp'n at 10.)   Defendant thus argues, "[t]hese cases demonstrate that the reasonably anticipated amount of attorneys' fees over the life of this case will result in the jurisdictional threshold easily being met here."   (*Id.*)

But once again, Defendant has not attempted to demonstrate the similarity or relevance of these cases to the one at hand, or provide a factual basis from its experience beyond broad, self-serving conclusions that in the chance this case is fully litigated, the amount in controversy will be satisfied.   As one court observed, "attorneys' fees are in the control of the client and counsel and may be avoided or accrue over years depending on legal strategy."   *Foltz v. Integon Nat. Ins. Co.*, No. 1:14-CV-00907-KJM, 2014 WL 4960765, at *3 (E.D. Cal. Oct. 2, 2014).   The fact that it is possible this case may proceed past the early stages of litigation and through to trial, and that the Court might later award attorneys' fees in excess of $75,000, does not establish that those events are more likely than not to occur.   This speculative estimate of future attorneys' fees does not satisfy Defendant's burden.   Moreover, applying the Defendant's logic, *any* case where attorneys' fees may be awarded by statute would satisfy the amount in controversy, even if unsupported by any concrete evidence, merely because litigation is expensive and the fact

a case was filed raises the possibility it may proceed to trial.   The Court does not find this reasoning persuasive and concludes Defendant has not established by a preponderance of the evidence that attorneys' fees in this matter will exceed the jurisdictional threshold.

### D. Settlement Demand

On February 9, 2017, prior to filing the instant motion, Plaintiffs made a settlement demand in the amount of $51,000, plus park tickets and passes valued at not more than $1,500 total (an estimated $120 per ticket for three visits, plus 10 re-admit passes at $10 each, for three plaintiffs).   (*See* Declaration of Scott E. Schutzman in support of Plaintiffs' Reply ¶ 2.)   Plaintiffs contend this demand "is evidence that this case belongs in state court."   (Dkt. No. 19, Reply at 2.)

On March 13, 2017, Defendant filed a supplement to its opposition, notifying the Court that Plaintiffs' counsel indicated the settlement demand would expire at the close of business on March 15, 2017.   (Dkt. No. 20.)   Defendant argues Plaintiffs have thus "conceded that [the] offer was merely a compromised discount from the total amount of damages."   (*Id.*)

A settlement demand may supply "relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."   *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).   But the Court need not decide whether Plaintiffs' demand was a reasonable one.   If reasonable, the amount in controversy would not be satisfied by the amount demanded.   If unreasonable, Defendant has not challenged Plaintiffs' valuation by presenting its own estimate, nor has it otherwise demonstrated the amount in controversy exceeds $75,000 by a preponderance of the evidence so as to establish jurisdiction here.   In either case, the Court finds the jurisdictional minimum would not be met.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds Defendant has not established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000. Accordingly, the Court **GRANTS** Plaintiffs' Motion to Remand.   The clerk shall remand this action to Los Angeles County Superior Court and close the case.

### IT IS SO ORDERED.